IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DANIELLE RENNENGER,<br><br>        Plaintiff,<br><br>v.<br><br>AQUAWOOD, LLC; BANZAI INTERNATIONAL LTD.; CHAN MING YIU a/k/a SAMSON CHAN; CHAN SIU LUN a/k/a ALAN CHAN; DOLLAR EMPIRE LLC; BRIAN DUBINSKY; LIU YI MAN a/k/a LISA LIU; MANLEY TOY DIRECT, LLC a/k/a/ WORLDWIDE TOY DIRECT; MGS INTERNATIONAL, LLC; PARK LANE SOLUTIONS LTD.; RICHARD TOTH; TOY NETWORK, LLC; TOY NETWORK HONG KONG; TOY QUEST LTD.; and MICHAEL WU,<br><br>        Defendants. | **No. 4:19-cv-00123-RGE-SBJ**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| AMMEE ROUSH,<br><br>        Plaintiff,<br><br>v.<br><br>AQUAWOOD, LLC et al.,<br><br>        Defendants. | **No. 4:19-cv-00131-RGE-SBJ**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| ROBIN LYNN DRAKE,<br><br>        Plaintiff,<br><br>v.<br><br>AQUAWOOD, LLC et al.,<br><br>        Defendants. | **No. 4:19-cv-00132-RGE-SBJ**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

| | |
|---|---|
| HEATHER MILLER, | **No. 4:19-cv-00134-RGE-SBJ** |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| AQUAWOOD, LLC et al., | |
| Defendants. | |
| TAMMIE ACKELSON, | **No. 4:19-cv-00135-RGE-SBJ** |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| AQUAWOOD, LLC et al., | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiffs Danielle Rennenger, Ammee Roush, Robin Lynn Drake, Heather Miller, and Tammy Ackelson, bring separate—but nearly identical—suits against Defendants. Plaintiffs allege judgment debtors Defendants Manley Toy Direct, LLC, Aquawood, LLC, and Toy Network, LLC, and the other named Defendants, violated the Racketeer Influenced and Corrupt Organizations Act (RICO) by participating, and conspiring to participate, in a scheme to evade paying judgments Plaintiffs obtained in workplace sexual harassment lawsuits. Plaintiffs also seek to pierce the corporate veil and collect damages from Defendants Samson Chan, Alan Chan, Lisa Liu, Brian Dubinsky, Toy Network Hong Kong, Toy Quest Ltd., Banzai International Ltd., and Park Lane Solutions Ltd., for allegedly utilizing, or operating as, entities for the singular purpose of furthering the judgment evasion scheme. Hong Kong-based Defendants Samson Chan, Alan Chan, Lisa Liu,

Toy Quest Ltd., Banzai International, and Park Lane Solutions[1] move to dismiss for lack of personal jurisdiction. For the reasons stated below, the Court denies the Hong Kong Defendants' motion as to individual Hong Kong Defendants Samson Chan, Alan Chan, and Lisa Liu. The Court grants Hong Kong Defendants' motion as to the entity Hong Kong Defendants Toy Quest Ltd., Banzai International, and Park Lane Solutions.

## II.   BACKGROUND

### A.   Procedural History

Plaintiffs filed federal and state workplace sexual harassment and sex discrimination cases against Defendants Manley Toy Direct, Aquawood, and Toy Network, and nonparties AW Computer Holdings and SLB Toys USA, Inc. Compl., ¶¶ 117, 118, ECF No. 1.[2] Judgments were awarded in their individual cases in 2015, 2016, and 2017. *See id.* (charting basic case information and judgment amounts). After unsuccessful attempts to collect on the judgments, Plaintiffs sued judgment debtors Manley Toy Direct, Toy Network, Aquawood, and other allegedly affiliated individuals and corporations in this Court. *See generally id.* Plaintiffs claim Defendants acted as an association-in-fact enterprise utilizing "a shifting web of interchangeable trade names and companies with shared addresses, accounts, personnel, and other resources" to further a judgment evasion scheme. *Id.* ¶ 3.

Plaintiffs have separate underlying judgments and bring separate suits in this Court. However, Plaintiffs' factual allegations and causes of action are nearly identical.[3] In Count I,

---

[1] The Court refers to movants Samson Chan, Alan Chan, and Lisa Liu as the "individual Hong Kong Defendants," and Toy Quest Ltd., Banzai International Ltd., and Park Lane Solutions Ltd. as the "entity Hong Kong Defendants." All movants are referred to collectively as the "Hong Kong Defendants" for purposes of this Order.

[2] For ease of reference, the Court cites to filings as they appear on the docket for *Rennenger v. Aquawood et al.*, No. 4:19-cv-00123.

[3] Plaintiff Roush's complaint sets forth the additional claim of "continuing corporation successor liability" against Defendant MGS International as Count II. *See Roush*, ECF No. 1 ¶¶ 635–40.

Plaintiffs seek to pierce the corporate veils of Defendants Manley Toy Direct, Toy Network, Toy Network Hong Kong, Toy Quest Ltd., Banzai International, and Park Lane Solutions. *Id.* ¶¶ 612–34. Plaintiffs allege they are entitled to execute their judgments against Defendants Samson Chan, Alan Chan, Lisa Liu, Brian Dubinsky, Toy Network Hong Kong, Toy Quest Ltd., Banzai International, and Park Lane Solutions pursuant to Federal Rule of Civil Procedure 69.[4] *See id.* ¶¶ 43, 633–34.

Plaintiffs also allege two RICO claims. In Count II, Plaintiffs claim Samson Chan, Alan Chan, Lisa Liu, Brian Dubinsky, Richard Toth, Manley Toy Direct, Toy Network, MGS International, Toy Quest Ltd, Aquawood, Dollar Empire, Banzai International, and Park Lane Solutions (the "RICO Defendants") are employed by or associated with the "SLB Enterprise." *Id.* ¶¶ 44, 639–40. Plaintiffs assert the RICO Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding independent creditors in violation of 18 U.S.C. § 1962(c). *Id.* ¶¶ 636–44. In Count III, Plaintiffs allege the RICO Defendants conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). *Id.* ¶¶ 645–50.

Plaintiffs use a group pleading approach, collectively grouping the various Defendants in the complaints, each in excess of 100 pages. Plaintiffs group Defendants into "RICO Defendants," the "Corporate Veil Defendants," and the "Corporate Shell Defendants." *Id.* ¶¶ 42–44. Plaintiffs include the individual Hong Kong Defendants among the "Corporate Veil Defendants" and "RICO Defendants." *Id.* ¶¶ 43–44. Plaintiffs include the entity Hong Kong Defendants among the "Corporate Shell Defendants," "Corporate Veil Defendants," and "RICO Defendants."

---

[4] Because their judgments were entered in the Iowa District Court for Warren County—as opposed to federal court—Plaintiffs Drake, Miller, and Ackelson invoke "the equitable powers of Iowa courts to secure complete justice and make plaintiffs whole." *Drake*, ECF No. 1 ¶ 634; *Miller*, ECF No. 1 ¶ 634; *Ackelson*, ECF No. 1 ¶ 634.

4

*See id.* ¶¶ 42–44. In addition to designating them as "RICO Defendants" and "Corporate Veil Defendants," Plaintiffs identify individual Hong Kong Defendants Samson Chan, Alan Chan, and Lisa Liu as "Principals." *Id.* ¶¶ 25–26, 28–29. Defendant Brian Dubinsky is also identified as a "Principal." *Id.* ¶¶ 27, 29.

The Hong Kong Defendants now move to dismiss Plaintiffs' complaints for lack of personal jurisdiction. Hong Kong Defs.' Mot. Dismiss Lack Personal Jurisdiction, ECF No. 65. A number of Defendants have also moved to dismiss Plaintiffs' complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Hong Kong Defs.' Mot. Dismiss Failure State Claim, ECF No. 66; Defs. Aquawood's & Brian Dubinsky's Mot. Dismiss Failure State Claim, ECF No. 69; Defs. Dollar Empire's & Michael Wu's Mot. Dismiss Failure State Claim, ECF No. 70.

This Order only addresses the Hong Kong Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 65. Plaintiffs jointly resist the Hong Kong Defendants' motion. Pls.' Joint Resist. Hong Kong Defs.' Mot. Dismiss Lack Personal Jurisdiction, ECF No. 115. The parties did not request oral argument, and the Court declines to order it, finding the parties' briefing adequately presents the issues. *See* Fed. R. Civ. P. 78(b).

## B.     Factual Background

Each complaint contains at least 650 paragraphs. ECF No. 1. The factual background below is limited to allegations in Plaintiffs' complaints relevant to the Hong Kong Defendants' connections to Iowa. The Court considers the facts alleged in the pleadings, and Plaintiffs' supporting affidavits and exhibits, for the purpose of analyzing the Hong Kong Defendants' motion to dismiss for lack of personal jurisdiction. *See Johnson v. Arden*, 614 F.3d 785, 793–94 (8th Cir. 2010). The Court views the evidence in the light most favorable to Plaintiffs,

resolving all factual conflicts in Plaintiffs' favor. *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011); *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

The individual Hong Kong Defendants' contacts with Iowa are identified throughout Plaintiffs' complaints. Defendants Samson Chan and Lisa Liu "conducted a substantial amount of business in Iowa" by supervising the operations of companies in Iowa and personally visiting Iowa. ECF No. 1 ¶ 59. Samson Chan and Liu are identified as the sole owners of Defendant Manley Toy Direct, an Iowa corporation and judgment debtor. *Id.* ¶¶ 61–63; *see also id.* ¶ 70b. Samson Chan also directed Manley Toy Direct's operations and the operations of fellow judgment debtor and Iowa corporation, Defendant Toy Network. *Id.* ¶ 186. Samson Chan, Alan Chan, Liu, and Defendant Brian Dubinsky paid Manley Toy Direct for various expenses through Hong Kong-based companies Toy Quest Ltd. and Manley Toy Ltd. *Id.* ¶ 78. Manley Toy Ltd. is a nonparty currently subject to a litigation stay as a result of ongoing bankruptcy proceedings in the District of New Jersey. *See* Order Den. in Part & Grant in Part Mot. Stay Relief, *In re Manley Toys Ltd.*, No. 16-15374-JNP (Bankr. D.N.J.  Mar. 27, 2018), ECF No. 315.

After Manley Toy Direct and Toy Network were found liable for damages in Plaintiffs' workplace sexual harassment cases, Samson Chan, Alan Chan, Liu, and the "other RICO Defendants"[5] dissolved Manley Toy Direct and Toy Network to transfer their business and assets to other corporations such as Defendants Toy Network Hong Kong, MGS International, Toy Quest Ltd., Aquawood, Dollar Empire LLC, Banzai International, and Park Lane Solutions.[6]

---

[5] The Complaint includes fourteen of the fifteen named Defendants—all except Toy Network Hong Kong—in its definition of "RICO Defendants." *See* ECF No. 1 ¶ 44.

[6] The Complaint alleges Manley Toy Direct's and Toy Network's assets and business were transferred to "other Corporate Shell Defendants." ECF No. 1 ¶ 169. Plaintiffs define "Corporate Shell Defendants" as Manley Toy Direct, Toy Network, Toy Network Hong Kong, MGS International, Toy Quest Ltd., Aquawood, Dollar Empire, Banzai International, and Park Lane. *Id.* ¶ 42. It is unclear whether Plaintiffs are claiming assets and business were transferred to all or

*See id.* ¶¶ 42, 169. The dissolution of Manley Toy Direct and Toy Network, and transfer of their assets and business, was allegedly undertaken to enable the Hong Kong Defendants, and other RICO Defendants, to continue doing business in Iowa without having to pay Plaintiffs or other independent creditors. *See id.* ¶¶ 169, 246. On one occasion, Toy Network sold $1.3 million worth of inventory from Iowa. *See id.* ¶¶ 248–49. Samson Chan, Alan Chan, Liu, and Toy Network then sent the proceeds of the $1.3 million sale from Iowa to Manley Toy Ltd.'s bank account in Hong Kong. *See id.* ¶ 249. The individual Hong Kong Defendants, along with Dubinsky, also caused Toy Network to sell a warehouse in Indianola, Iowa. *See id.* ¶¶ 251–52. Alan Chan then wired over $6 million in building sale proceeds from Iowa to Manley Toy Ltd.'s Hong Kong bank account. *See id.*

There are fewer factual allegations connecting the entity Hong Kong Defendants to Iowa. The entity Hong Kong Defendants are primarily identified through their relationships with nonparty Manley Toy Ltd. Samson Chan allegedly formed Toy Quest Ltd. and Banzai International to enable Manley Toy Ltd. to evade creditors in the United States. *See id.* ¶¶ 272, 317; *see also id.* ¶ 166. Similarly, Park Lane Solutions was allegedly created to drain Manley Toy Ltd. of resources and documents and thereby help Manley Toy Ltd. evade creditors and liquidators. *Id.* ¶ 312. As part of their efforts to assist in evading creditors, Park Lane Solutions and Banzai International engaged in customs fraud with California-based Defendants Michael Wu and Dollar Empire. *See id.* ¶¶ 468–77. Park Lane Solutions and Banzai International, with the assistance of Wu, named Dollar Empire as the buyer of various products sold by the Defendants' alleged association-in-fact enterprise, but invoices and related documents indicated the products' ultimate destination was Iowa. *See id.* ¶¶ 477d, 496b, 575; *see also id.* ¶ 3. Additionally, before its

---

just some of these corporations after the dissolution of Manley Toy Direct and Toy Network. *See id.* ¶ 169.

dissolution, Manley Toy Direct received shipments from Toy Quest Ltd. at its Iowa warehouse. *Id.* ¶ 255c.

Additional facts are discussed below as necessary.

## III.   LEGAL STANDARD

"To survive a motion for dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *K-V Pharm.*, 648 F.3d at 591–92 (alteration in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). In analyzing personal jurisdiction, the Court first must determine whether the exercise of jurisdiction is proper under Iowa's long-arm statute. *See, e.g.*, *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387–88 (8th Cir. 1991). If the statutory requirements are met, the Court must then consider whether its exercise of personal jurisdiction comports with due process. *Id.* at 1388. Iowa's long-arm statute authorizes the exercise of personal jurisdiction to the furthest extent permitted by constitutional due process. *See* Iowa R. Civ. P. 1.306; *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *Hammond v. Florida Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005)). "[S]o the two-part inquiry is merged into a single question: would requiring the defendants to litigate this case in [Iowa] offend due process?" *Pederson v. Frost*, No. 18-3195, 2020 WL 1144609, at *2 (8th Cir. Mar. 10, 2020).

"Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Fastpath*, 760 F.3d at 820 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Sufficient minimum contacts exist if a nonresident defendant's contacts with the forum state are

such that the defendant should reasonably anticipate being haled into court there. *Id.* at 820–21. To have sufficient minimum contacts, the nonresident defendant must engage in "some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 821 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011)). Requiring purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693–94 (8th Cir. 2003) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Thus, the relationship between a defendant's conduct and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475).

The Eighth Circuit has established five factors to consider in determining whether personal jurisdiction may be exercised over a nonresident defendant:

> (1) [T]he nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

*K-V Pharm.*, 648 F.3d at 592 (alteration in original) (internal quotation marks omitted) (quoting *Johnson*, 614 F.3d at 794). "Although the first three factors are primary factors, and the remaining two are secondary factors," the Court looks at "all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *Id.* at 592–93 (internal quotation marks omitted) (quoting *Johnson*, 614 F.3d at 794).

There are two kinds of personal jurisdiction: general and specific. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). The exercise of general personal jurisdiction over a corporation requires contacts with the forum state that are so continuous and systematic that the corporation is essentially at home in the forum state.

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Such contacts exist in the states where the corporation is incorporated and maintains its principal place of business. *Id.* at 137. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Viasystems*, 646 F.3d at 593 (internal quotation marks and citations omitted).

## IV.   DISCUSSION

The Hong Kong Defendants move to dismiss Plaintiffs' complaints for lack of personal jurisdiction. ECF No. 65. They argue that despite the length of Plaintiffs' complaints, the allegations do not demonstrate the Hong Kong Defendants have sufficient minimum contacts with Iowa. Hong Kong Defs.' Br. Supp. Mot. Dismiss Lack Personal Jurisdiction 3, ECF No. 65-1. The Hong Kong Defendants assert Plaintiffs' allegations connecting them to Iowa are minimal, vague, and unrelated to Plaintiffs' causes of action, and therefore Plaintiffs fail to show the Hong Kong Defendants are subject to personal jurisdiction in this Court. *See id.* at 6–7.

Plaintiffs resist the Hong Kong Defendants' motion, arguing several theories support the Court's exercise of jurisdiction. *See* ECF No. 115 at 8–19. Plaintiffs argue the Hong Kong Defendants are subject to personal jurisdiction in Iowa because they have purposefully availed themselves of the privilege of doing business in Iowa. *Id.* at 16–17. Plaintiffs contend a *Calder* effects analysis further supports the Court's exercise of specific personal jurisdiction because the Hong Kong Defendants have directed intentional acts at Iowa plaintiffs. *Id.* at 11–16; *see generally Calder v. Jones*, 465 U.S. 783 (1984). Plaintiffs further argue their complaints and supporting exhibits establish a prima facie showing of personal jurisdiction because the contacts of the Hong Kong Defendants' alleged co-conspirators or alter egos may be imputed to the Hong Kong Defendants. ECF No. 115 at 17–18.

In support of their resistance, Plaintiffs provide Exhibit A, a copy of the Findings of Fact and Entry of Judgment in Plaintiff Ackelson's workplace sexual harassment case in the Iowa District Court for Warren County.[7] Pls.' Ex. A, ECF No. 115-3; *see also* Att'y Sugimura Aff. Supp. Pls.' Resist. Defs.' Mot. Dismiss Lack Personal Jurisdiction ¶ 3, ECF No. 115-2. Plaintiffs' Exhibits B and C are documents produced by supply chain management company American Cargo Express in response to subpoenas. Pls.' Exs. B & C, ECF Nos. 115-4, 115-5; *see also* ECF No. 115-2 ¶¶ 4–5. As Exhibit D, Plaintiffs provide a copy of MGS International's business entity summary from the Iowa Secretary of State's website. Pls.' Ex. D, ECF No. 115-6; *see also* ECF No. 115-2 ¶ 6.

Considering Plaintiffs' complaints and supporting affidavits and exhibits, viewing the evidence in the light most favorable to Plaintiffs, and resolving all factual conflicts in their favor, the Court concludes Plaintiffs make a prima facie showing of personal jurisdiction over individual Hong Kong Defendants: Samson Chan, Alan Chan, and Liu. The Court denies the Hong Kong Defendants' motion as to those defendants. The Court finds Plaintiffs fail to establish a prima facie showing of personal jurisdiction over the entity Hong Kong Defendants: Toy Quest Ltd., Banzai International, and Park Lane Solutions. As such, the Court grants the Hong Kong Defendants' motion as to the entity Hong Kong Defendants.

A.      **Five-Factor Minimum Contacts Analysis**

The Court considers Plaintiffs' complaints and supporting documents under the five-factor minimum contacts analysis to determine whether Plaintiffs make a prima facie showing of personal jurisdiction as to the Hong Kong Defendants. The first three factors are the most important in the minimum contacts analysis. *See K-V Pharm.*, 648 F.3d at 592–93. The Court applies the first three

---

[7] The Court notes Plaintiffs have not labeled exhibits numerically, as required by Local Rule 83E.

factors to the individual Hong Kong Defendants and the entity Hong Kong Defendants separately.

1. **Three primary factors: nature and quality of contacts with forum state; quantity of contacts; and relationship between cause of action and contacts with the forum state**

      a.   Individual Hong Kong Defendants: Samson Chan, Alan Chan, and Lisa Liu

Plaintiffs' complaints provide multiple factual allegations describing the Iowa contacts maintained by individual Hong Kong Defendants Samson Chan, Alan Chan, and Liu. Plaintiffs include several allegations in their complaints indicating Samson Chan and Liu visited Iowa on several occasions. *See* ECF No. 1 ¶ 59. Plaintiffs also provide an affidavit by Plaintiff Ackelson stating that when she worked for Manley Toy Direct, her Hong Kong-based supervisor said he worked for Samson Chan, the owner of Manley Toys Ltd., Toy Quest Ltd., and Toy Network. Aff. Ackelson Supp. Pls.' Resist. Defs.' Mot. Dismiss Lack Personal Jurisdiction ¶¶ 4, 6, ECF No. 115-1. Ackelson states that she saw Samson Chan visiting Manley Toy Direct in Iowa on more than twenty occasions. *See id.* ¶ 8. According to Ackelson, Samson Chan was "almost always" accompanied by Liu. *Id.* ¶ 9. As to the nature and quality of Samson Chan's and Liu's visits to Iowa, it can be inferred from Plaintiffs' allegations that they relate to supervising and managing the operations of Iowa companies they owned or directed. *See* ECF No. 1 ¶ 59; *see also id.* ¶¶ 61–63.

The Hong Kong Defendants assert that Plaintiffs fail to show any relationship between Samson Chan and Liu's Iowa contacts and Plaintiffs' claims, as required for specific personal jurisdiction. *See* ECF No. 65-1 at 7 (citing *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017)). However, Plaintiffs' Exhibit A recounts Samson Chan's and Liu's visit to Indianola, Iowa, after Ackelson and Rennenger filed sexual harassment complaints with the Iowa Civil Rights Commission. *See* ECF No. 115-3 at 12. Plaintiffs do not address the purpose of every Iowa visit made by Samson Chan and Liu, but it is reasonable to

infer that these visits related to oversight of Manley Toy Direct. And because these visits occurred during Plaintiffs' employment, it is reasonable to connect these visits to the judgments Plaintiffs received against Manley Toy Direct in their workplace sexual harassment lawsuits. *See* ECF No. 1 ¶ 61 (identifying Samson Chan and Liu as sole owners of Manley Toy Direct). Plaintiffs' current claims derive from the failure of Iowa judgment debtors to satisfy the judgments arising from Plaintiffs' workplace sexual harassment cases. Therefore, the three primary factors of the five-factor analysis support the Court's exercise of jurisdiction over Samson Chan and Liu. *See K-V Pharm.*, 648 F.3d at 592.

Plaintiffs' allegations regarding Alan Chan's connections to Iowa do not indicate he made similar visits to Iowa. However, Alan Chan engaged in conduct outside Iowa intending the effects of such conduct to be felt in Iowa. Specifically, Plaintiffs point to an allegedly false affidavit Alan Chan submitted as the President of Manley Toys Ltd. to the court in an underlying judgment enforcement case.[8] *See* ECF No. 1 ¶¶ 253, 350, 354. Plaintiffs also assert Alan Chan wired funds from the sale of an Iowa warehouse to Manley Toy Ltd.'s Hong Kong bank account. *See id.* ¶ 251–52. Alan Chan's contacts were not only directed at Iowa; they were also related to the judgment evasion scheme alleged by Plaintiffs here. *See id.* ¶ 252. The nature and quality of Alan Chan's alleged contacts with Iowa are serious in that they involve direct efforts to deceive Iowa courts and deprive Iowa residents of judgments issued by courts in Iowa.

Because Plaintiffs allege Alan Chan engaged in intentional acts aimed at Iowa, the Court relies on a *Calder* effects analysis, in addition to the five-factor analysis. *See Dakota Indus.*,

---

[8] The judge in this District previously assigned to Rennenger's underlying workplace sexual harassment case relied on Alan Chan's affidavit claiming Manley Toy Ltd. maintained no property or offices in the United States—but sold products to Iowa companies—to find Manley Toy Ltd. was not subject to personal jurisdiction in Iowa. *See* Order 13–15, *Rennenger v. Manley Toy Direct, et al.*, No. 4:10-cv-00400-RGE-RAW (S.D. Iowa Dec. 5, 2013), ECF No. 133.

946 F.2d at 1391 ("[W]e do not abandon the five-part test. . . . We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged.").

In *Calder*, the Supreme Court determined personal jurisdiction exists over claims arising from intentional wrongdoing "expressly aimed" at plaintiffs in the forum state. *See* 465 U.S. at 789–90. Under the *Calder* effects test, the Court considers whether a nonresident defendant acted as a "primary participant[ ] in an alleged wrongdoing intentionally directed" at a resident of the forum State. *Calder*, 465 U.S. at 790; *see also Dakota Indus.*, 946 F.2d at 1391. "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King*, 471 U.S. at 475).

Here, Plaintiffs allege Alan Chan intentionally submitted a false affidavit to an Iowa court and wired funds from the sale of Iowa property to Hong Kong in an effort to evade paying judgments held by Iowa residents and issued by Iowa courts. Plaintiffs are not the only link between Alan Chan's alleged conduct and Iowa, as the alleged contacts relate to Alan Chan's sale of Iowa property and fraud on Iowa courts. The *Calder* effects test—in addition to the three primary factors of the five-factor analysis—supports the Court's exercise of personal jurisdiction over Alan Chan.

In summary, the three primary factors of the five-factor analysis weigh in favor of the Court's exercise of personal jurisdiction over the individual Hong Kong Defendants Samson Chan, Alan Chan, and Liu.

The individual Hong Kong Defendants rely on *Capital Promotions, L.L.C. v. King*, to argue the fiduciary shield doctrine prevents Plaintiffs from establishing personal jurisdiction over them based solely on their activities as corporate officers or agents. *See* ECF No. 65-1 at 8 (citing No. 4:07-cv-00342, 2008 WL 11333444, at *6 (S.D. Iowa June 6, 2008), *aff'd*, 308 F. App'x 36 (8th Cir. 2009) (per curiam) (unpublished)). But, as *Capital Promotions* itself recognizes, the fiduciary shield doctrine is "exclusively a creation of state law," and courts exercising federal question jurisdiction generally refuse to apply it. 2008 WL 11333444, at *9 (collecting cases). Here, the Court exercises federal question jurisdiction pursuant to 28 U.S.C. § 1331. As such, the individual Hong Kong Defendants cannot rely on the fiduciary shield doctrine to escape the Court's exercise of personal jurisdiction.

      b.      Entity Hong Kong Defendants: Toy Quest Ltd., Banzai International, and Park Lane Solutions

As to the entity Hong Kong Defendants, Plaintiffs' complaints never identify any direct contacts between Park Lane Solutions or Banzai International and the State of Iowa. Plaintiffs' allegations regarding Banzai International and Park Lane Solutions focus on their connection to another Hong Kong corporation, Manley Toy Ltd. *See id.* ¶ 177 (claiming the companies all operate out of the same location in Hong Kong), ¶ 272 (alleging Manley Toy Ltd.'s assets were transferred to Toy Quest Ltd. and then to Banzai International), ¶ 312 (asserting the "Principals" created Park Lane Solutions to assume Manley Toy Ltd.'s resources and documents), ¶ 313 (claiming Manley Toy Ltd. employees were reassigned to identical positions at Park Lane Solutions), ¶ 314 (alleging Park Lane Solutions employees use Manley Toy Ltd. email addresses and sell the same products). Plaintiffs' only attempt to connect Banzai International and Park Lane Solutions to Iowa is the allegation that Banzai International and Park Lane Solutions named Defendant Dollar Empire as the purchaser of products that were ultimately shipped to Iowa. *See id.* ¶¶ 206, 473. Plaintiffs provide shipment documents as exhibits in support of this alleged

connection. *See* ECF Nos. 115-4, 115-5. Given these limited connections, the first three factors of the five-factor minimum contacts analysis do not favor personal jurisdiction over Banzai International or Park Lane Solutions.

Similarly, Plaintiffs' allegations regarding Toy Quest Ltd. rely primarily on its relationship with nonparty Manley Toy Ltd. *See* ECF No. 1 ¶ 336; *see also id.* ¶¶ 283–85 (describing vendor name change from Manley Toy Ltd. to Toy Quest Ltd. while using the same employees and selling the same products). Plaintiffs' complaints do not indicate direct links between Toy Quest Ltd. and Iowa. Instead, a number of paragraphs address Toy Quest Ltd.'s actions in the District of Minnesota. *See id.* ¶¶ 383–409. The primary support for Toy Quest Ltd.'s Iowa contacts is its dealings with Iowa-based Manley Toy Direct. *See id.* ¶ 255c. Plaintiffs allege Manley Toy Direct received shipments from Toy Quest Ltd. at its Iowa warehouse before Manley Toy Direct's dissolution. *Id.* Plaintiffs' claim the "Principals" paid Manley Toy Direct for expenses through Toy Quest Ltd. *Id.* ¶ 78. These are the only references to Toy Quest Ltd.'s Iowa-related conduct. *See id.* ¶ 255c. Therefore, the first three factors weigh against exercising personal jurisdiction over Toy Quest Ltd.

> **2.    Secondary Factors: the interest of the forum state in providing a forum for its residents and the convenience or inconvenience to the parties**

All five Plaintiffs were residents of Iowa when they filed their workplace sexual harassment suits. *See* ECF No. 115 at 3–4. The injuries giving rise to Plaintiffs' judgments in those cases occurred in the State of Iowa. *See id.* at 4; ECF No. 115-3 at 8–9. Four of the five Plaintiffs still reside in Iowa. *See* ECF No. 115 at 4. The State of Iowa maintains an interest in providing a forum for its residents. *See Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997). This factor weighs in favor of the exercise of personal jurisdiction over the Hong Kong Defendants. At the same time, litigating in the State of Iowa is clearly inconvenient for Hong Kong residents and

entities. This factor weighs against the exercise of personal jurisdiction over the Hong Kong Defendants.

Weighing all five factors and considering the totality of the circumstances, the Court finds Plaintiffs make a prima facie showing of personal jurisdiction as to the individual Hong Kong Defendants. Conversely, the same considerations do not support the Court's exercise of jurisdiction over the entity Hong Kong Defendants. The Court finds Plaintiffs fail to make the required prima facie showing of personal jurisdiction as to Toy Quest Ltd., Banzai International, and Park Lane Solutions.

**B.    Additional Theories of Personal Jurisdiction**

Plaintiffs argue the Court should employ a co-conspirator jurisdictional contacts approach and/or an alter ego theory of personal jurisdiction to find personal jurisdiction over the Hong Kong Defendants. Because the Court has already concluded the individual Hong Kong Defendants are subject to personal jurisdiction in Iowa, the Court considers Plaintiffs' supplemental theories of personal jurisdiction as to the entity Hong Kong Defendants only. The Court declines to apply a co-conspirator contacts theory or an alter ego theory to find Plaintiffs have established personal jurisdiction over the entity Hong Kong Defendants.

**1.    Co-conspirator jurisdictional contacts**

The parties rely on conflicting decisions from the Northern and Southern Districts of Iowa to argue for and against the use of co-conspirator contacts in a minimum contacts analysis. Plaintiffs rely on *Remmes v. International Flavors & Fragrances, Inc.*, to argue that the Court should consider the contacts of the Hong Kong Defendants' alleged co-conspirators to find the Hong Kong Defendants have sufficient minimum contacts with Iowa. 389 F. Supp. 2d 1080, 1093–94 (N.D. Iowa 2005); *see* ECF No. 115 at 11, 16–17. The Hong Kong Defendants assert the Court should reject the co-conspirator jurisdictional contacts theory, citing *Brown v. Kerkhoff*,

504 F. Supp. 2d 464, 518 (S.D. Iowa 2007). Hong Kong Defs.' Reply Supp. Mot. Dismiss Lack of Personal Jurisdiction 3, ECF No. 134. Despite Plaintiffs' assertions, attributing jurisdictional contacts of co-conspirators to the Hong Kong Defendants does not appear to be a viable method of assessing minimum contacts because it runs contrary to the due process foundations of the personal jurisdiction analysis. *See Brown*, 504 F. Supp. 2d at 518.

The Court is not bound by either *Remmes* or *Brown*, but it finds the reasoning in *Brown* persuasive. In rejecting *Remmes*, the court in *Brown* reasoned "a mechanical rule stating that simply because a pleading contains sufficient allegations that a conspiracy occurred means personal jurisdiction must therefore exist over all co-conspirators wherever they reside gives short shrift to the constitutional mandate that there be some connection between each defendant and the forum." *Id.* at 518. As such, the court concluded "a nonresident's alleged participation in a conspiracy cannot serve as a constitutionally sufficient basis to exercise in personam jurisdiction over that individual in situations which would otherwise fail the minimum contacts approach." *Id.* (internal quotation marks omitted).

*Brown* focuses on the basic constitutional requirements for the exercise of personal jurisdiction as set forth by decades of precedent beginning with the minimum contacts analysis from *International Shoe*. *See id.* at 517 (criticizing *Remmes* analysis for being "underappreciative of Supreme Court precedent" and missing the constitutional phase of personal jurisdiction analysis). This Court similarly finds the due process aims of fair play and substantial justice cannot be preserved through attributing the contacts of Iowa-based Defendants to Hong Kong-based Defendants merely because Plaintiffs allege a RICO conspiracy. Thus, the Court declines to consider the Hong Kong Defendants' alleged co-conspirator contacts with Iowa in determining whether Plaintiffs make a prima facie showing of personal jurisdiction as to the entity Hong Kong Defendants.

2.      **Alter Ego Theory**

In anticipation of Plaintiffs' argument based on the alter ego theory, the Hong Kong Defendants assert Plaintiffs are enjoined from bringing any alter ego claims related to Manley Toy Ltd. *See* ECF No. 65-1 at 8 (citing Order Den. in Part & Granting in Part  Mot. Stay Relief 2, *In re Manley Toys Ltd.*, No. 16-15374, ECF No. 315). Plaintiffs respond their complaints contain substantial allegations to support findings that Iowa-based companies Manley Toy Direct, Toy Network, and MGS International are alter egos of the Hong Kong Defendants. ECF No. 115 at 8.

There are two considerations undermining Plaintiffs' position. First, while "the alter ego doctrine disregards an entity's corporate form if the entity is 'merely an instrumentality or device set up to ensure the avoidance of [ ] legal obligations,'" Plaintiffs are requesting the Court to apply the theory in the context of legally separate entities, absent a parent-subsidiary relationship. *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (quoting *Benson v. Richardson*, 537 N.W.2d 748, 761 (Iowa 1995)); *cf. Whitesell Int'l Corp. v. Amtek Auto Ltd.*, No. 4:13-CV-00056-JAJ, 2014 WL 12603144, at *7 (S.D. Iowa Feb. 19, 2014) (concluding allegations of commingling of funds and control of subsidiary's financial decisions without more were insufficient to support alter ego theory to establish personal jurisdiction over parent corporation). The Eighth Circuit in *Epps v. Stewart Information Services Corp.*, determined that personal jurisdiction can be asserted over a nonresident parent corporation acting as the alter ego of an in-state subsidiary "if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." 327 F.3d 642, 648–49 (8th Cir. 2003). The nature of the relationship between two separate corporations—not engaged in a parent-subsidiary relationship—requires an especially strong showing of an alter ego relationship. Disregarding the corporate form is an "extraordinary measure.*" HOK Sport*, 495 F.3d at 935.

19

Here, Plaintiffs do not allege sufficient facts about the relationship between the entity Hong Kong Defendants and the Iowa companies Manley Toy Direct and Toy Network to show the extraordinary circumstances required to disregard the corporate form. *See id.*

Second, Plaintiffs' complaints repeatedly identify the entity Hong Kong Defendants in connection with Hong Kong company Manley Toys Ltd., and not the Iowa-based companies. *See* ECF No. 1 ¶¶ 177–78, 233, 272, 312–14, 320. In fact, Plaintiffs refer to Defendant MGS International as the successor to Manley Toy Direct and Toy Network. *See* ECF No. 1 ¶ 258 ("The SLB Enterprise created MGS for the purpose of protecting the enterprise from any judgments obtained by the Iowa victims. MGS was designed to take over business from Toy Network just as Toy Network had taken over business from [Manley Toy Direct]."). However, Plaintiffs allege the purpose of the entity Hong Kong Defendants is to assist Manley Toy Ltd. evade creditors. Plaintiffs allege Toy Quest Ltd. and Banzai International assisted Manley Toy Ltd. by receiving Manley Toy Ltd.'s assets and business. *See id.* ¶ 272. Park Lane Solutions assisted by receiving Manley Toy Ltd.'s resources and documents. *See id.* ¶ 312.

Plaintiffs' factual allegations lend significantly more support to an alter ego theory argument for Manley Toy Ltd. than the Iowa companies Manley Toy Direct and Toy Network. Plaintiffs' numerous factual allegations connecting the entity Hong Kong Defendants to Manley Toy Ltd. But Plaintiffs are prohibited from bringing alter ego claims related to Manley Toy Ltd. Order Den. in Part & Granting in Part  Mot. Stay Relief 2, *In re Manley Toys Ltd.*, No. 16-15374, ECF No. 315. And, Plaintiffs resist Defendants' motion for a stay pending Manley Toy Ltd.'s bankruptcy proceedings. *See* Pls.' Joint Resist. Defs.' Mot. Stay, ECF No. 73.

For these reasons, Plaintiffs fail to allege sufficient facts to show the entity Hong Kong Defendants are alter egos of Iowa companies Manley Toy Direct and Toy Network. As such, the

Court will not apply the alter ego theory to find personal jurisdiction exists over the entity Hong Kong Defendants.

### C.    Request for Jurisdictional Discovery

Plaintiffs have requested limited jurisdictional discovery in the event the Court finds Plaintiffs have not established personal jurisdiction. *See* ECF No. 115 at 19–20. "Jurisdictional discovery is appropriate where the plaintiff offers 'documentary evidence, and not merely speculations or conclusory allegations.'" *Whitesell*, 2014 WL 12603144, at *8 (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008)). "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Dever*, 380 F.3d at 1074 n.1 (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)).

Here, Plaintiffs have provided exhibits in support of their opposition to the Hong Kong Defendants' motion. As explained above, some of the exhibits support the Court's exercise of personal jurisdiction over the individual Hong Kong Defendants Samson Chan and Liu. However, Exhibits B and C—which indicate the entity Hong Kong Defendants sold products to a California company that were ultimately shipped to Iowa—do not justify the Court's exercise of jurisdiction over the entity Hong Kong Defendants. *See* Exs. B & C, ECF Nos. 115-4, 115-5. By providing these exhibits, without further explaining how they constitute purposeful contacts with Iowa, Plaintiffs provide little more than conclusory assertions that the entity Hong Kong defendants have sufficient minimum contacts with Iowa. Plaintiffs provide no specific reasoning supporting their request for jurisdictional discovery. Further, Plaintiffs do not indicate what they expect to obtain through jurisdictional discovery. As such, Plaintiffs' request for jurisdictional discovery is insufficient, and the Court denies it.

## V.    CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part the Hong Kong Defendants' motion. The Court **DENIES** the Hong Kong Defendants' Motion to Dismiss as to individual Hong Kong Defendants Samson Chan, Lisa Liu, and Alan Chan. The Court **GRANTS** the Hong Kong Defendants' Motion to Dismiss as to entity Hong Kong Defendants Toy Quest Ltd., Banzai International Ltd., and Park Lane Solutions.

Since the Court lacks personal jurisdiction over Hong Kong entities Toy Quest Ltd., Banzai International Ltd., and Park Lane Solutions, Plaintiffs' shall amend their complaints to enable the Court to sufficiently analyze Plaintiffs' claims against the remaining Defendants. The Court orders Plaintiffs to amend their complaints to reflect the changes imposed by this Order. Plaintiffs shall file their amended complaints no later than twenty-eight days from the date of this Order.

Because Defendants' previously filed motions to dismiss are based upon a complaint including the now-dismissed Defendants Toy Quest Ltd., Banzai International, and Park Lane Solutions, the Court **DISMISSES AS MOOT** Defendants' pending Motions to Dismiss for Failure to State a Claim, ECF Nos. 66, 69, and 70, in No. 4:19-cv-00123; ECF Nos. 66, 67, and 69, in No. 4:19-cv-00131; ECF Nos. 65, 67, and 69, in No. 4:19-cv-00132; ECF Nos. 64, 66, and 68, in No. 4:19-cv-00134; and ECF Nos. 66, 68, and 70, in No. 4:19-cv-00135.

**IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 65, in No. 4:19-cv-00123; ECF No. 64, in No. 4:19-cv-00131; ECF No. 64, in No. 4:19-cv-00132; ECF No. 63, in No. 4:19-cv-00134; and ECF No. 65, in No. 4:19-cv-00135, is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated this 27th day of March, 2020.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE